**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph P. Stone,<br><br>    Plaintiff,<br><br>v.<br><br>Certified Folder Display Service Incorporated,<br><br>    Defendant. | No. CV-17-04205-PHX-JJT<br><br>**ORDER** |

At issue is Defendant's Motion to Compel Arbitration (Doc. 22), to which Plaintiff filed a Response (Doc. 31) and Defendant filed a Reply (Doc. 32). In this Order, the Court also resolves Plaintiff's Motion for Telephonic Conference (Doc. 33). The Court finds these matters appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.     FACTUAL BACKGROUND**

Plaintiff Joseph P. Stone filed a Complaint on behalf of himself and a similarly situated class of employees against Defendant Certified Folder Display Service, Inc. (Doc. 1, Compl.) On behalf of a class of employees, Plaintiff alleges that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime wages. (Compl. ¶ 1.) In his individual capacity, Plaintiff claims that Defendant violated A.R.S. §§ 23-350–23-355 ("Arizona Wage Statute"). (Compl. ¶ 1.)

Plaintiff began working for Defendant in 2015. (Compl. ¶ 9.) At that time, Plaintiff received an employee manual containing an arbitration provision. (Doc. 22-5, Arbitration

Agreement.) Plaintiff signed the employee manual in acknowledgement of his receipt and understanding. (Doc. 22-6.) The Arbitration Agreement provides that:

> [E]mployee and [Defendant] agree to submit to final and binding arbitration any dispute arising from or related to employee's employment with [Defendant] . . . Employee and [Defendant] agree that such arbitration shall be the exclusive forum for resolving all disputes arising out of or involving the employee's employment with [Defendant] . . . EMPLOYEE AND [DEFENDANT] ACKNOWLEDGE AND AGREE THAT BY RESOLVING ANY DISPUTES THROUGH ARBITRATION AS PROVIDED IN THIS AGREEMENT, THE PARTIES ARE WAIVING ANY STATUTORY OR CONSTITUTIONAL RIGHTS EITHER MAY HAVE TO A JURY OR COURT TRIAL.

(Arbitration Agreement at 5–6.)

Defendant filed a Motion to Compel Arbitration (Doc. 22, Mot.). Defendant argues that Plaintiff's individual claims must proceed to arbitration, pursuant to their Arbitration Agreement. (Mot. at 1.) As for Plaintiff's class claims, Defendant asserts they are precluded by the Arbitration Agreement and that this Court must dismiss them. (Mot. at 1.) Plaintiff responds that he attempted to contact Defendant's counsel about moving the case to arbitration in early 2018, to no avail. (Doc. 31, Resp. at 1.) Plaintiff agrees that his individual claims are covered by the Arbitration Agreement but argues that his collective claims should also proceed to arbitration. (Resp. at 1–2.)[1] Plaintiff moves for sanctions against Defendant for its failure to respond to his attempts to stipulate to arbitration on all claims. (Resp. at 5.) Plaintiff argues that Defendant "needlessly expanded this litigation by failing to respond to Plaintiff's request," and then "refused to respond with a final answer regarding the draft stipulation Plaintiff circulated to that effect until late the day before Plaintiff's [Response to Defendant's Motion to Compel Arbitration] was due." (Resp. at 5.)

---

[1] Plaintiff concedes that "the parties are in agreement that arbitration is appropriate here. The only remaining issue is whether Plaintiff's claims can be arbitrated on a collective or classwide basis." (Resp. at 2.) Given that there is no dispute that Plaintiff's individual claims under the Arizona Wage Statute are governed by the Arbitration Agreement, the Court will not spend any more time on that issue and will speak only to Plaintiff's collective claims.

Defendant responds to Plaintiff's request for sanctions by pointing out that the parties could not reach a stipulation because submitting all of Plaintiff's claims—including his collective claims—to arbitration is the exact outcome that Defendant hopes to avoid. (Reply at 6–7.) Rather, Defendant believes that Plaintiff's class claims are precluded by the Arbitration Agreement and must be dismissed.

The parties' disagreement on whether all of Plaintiff's claims should proceed to arbitration hinges on a dispute about who can resolve that question. While Defendant believes it is within the Court's power to decide whether the Arbitration Agreement precludes Plaintiff's class claims, Plaintiff argues that the arbitrator must decide whether his class claims survive. (Doc. 32, Reply at 5; Resp. at 4.) Plaintiff argues that this Court cannot decide whether the Arbitration Agreement allows class arbitration because that "agreement provides that 'any dispute' arising from Plaintiff's employment must be decided by an arbitrator . . . [including] disputes regarding interpretation of whether Plaintiff can bring a claim arising from his employment on a class or collective action basis." (Resp. at 5.)

## II. LEGAL STANDARD

The Arbitration Agreement at issue is governed by the Federal Arbitration Act ("FAA"). Courts have recognized the FAA as a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

Even given courts' deference to arbitration agreements, there are certain questions pertaining to the enforcement of those agreements that should be decided by courts rather than arbitrators. The Supreme Court explained one such instance in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). There, the Court explained that there are often three disagreements between parties to an arbitration clause.

> First, [parties] disagree about . . . the *merits* of the dispute. Second, they disagree about whether they agreed to arbitrate the merits. That disagreement

> is about the *arbitrability* of the dispute. Third, they disagree about *who should have the primary power to decide the second matter.* Does that power belong primarily to the arbitrators (because the court reviews their arbitrability decision deferentially) or to the court (because the court makes up its mind about arbitrability independently)? We consider here only this third question.

*Id.* at 942.

When the question—as it was in *First Options* and is before the Court now—is whether an arbitrator or a court should decide who ultimately gets to decide a substantive issue, courts treat it differently than other questions surrounding arbitration because it is a "rather arcane" question. *Id.* at 945. That means that when entering into an arbitration agreement, "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." *Id.* (internal citations omitted). Thus, "one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* And the question of who determines arbitrability is more important and less obvious to the parties than a mere procedural issue, which the parties can anticipate ahead of time and can be decided by the arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (explaining that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide" (internal quotations omitted)).

Given the relative importance of the question of who decides arbitrability, the Supreme Court adopted a "more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). Under this test, "[r]ather than applying 'ordinary state-law principles that govern the formation of contracts . . . courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so.'" *Id.* (quoting *First Options of Chi., Inc.*, 514 U.S. at 944). Effectively, when deciding who will decide arbitrability, courts "reverse[] the presumption" that normally exists to favor

an arbitrator, and instead presume that the question is reserved for the courts. *First Options of Chi., Inc.*, 514 U.S. at 945.

Once the threshold issue has been resolved, either the arbitrator or the court is tasked with deciding the parties' issue on the merits. In other words, the decisionmaker is now faced with the second decision explained in *First Options*: the question of arbitrability, where parties "disagree about whether they agreed to arbitrate the merits." *Id.* at 942. This evaluation of what parties agreed to arbitrate requires that the arbitration agreement be interpreted according to standard rules of contract interpretation and enforced according to its written terms. *See AT&T Mobility LLC*, 563 U.S. at 339.

When the arbitrability dispute regards whether collective claims may proceed to arbitration, the decisionmaker should recognize that "parties may specify with whom they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 683 (2010). The Supreme Court has found that this means there is no such thing as "[a]n implicit agreement to authorize class-action arbitration," and if parties want to allow collective suits to proceed to arbitration, their agreement must clearly state that. *Id.* at 685.

Once a decisionmaker determines the question of arbitrability, the question remains: what happens to the claims if they cannot be arbitrated? In the case of collective claims, recent Supreme Court case law on this issue discusses whether an arbitration agreement can effectively prevent all class action claims, such that an employee's collective claims must be dismissed rather than sent to arbitration. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

### III. ANALYSIS

While Defendant cites *First Options*, among other cases, in support of its argument that the Court should decide the question of arbitrability, Plaintiff mainly relies on *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). But in *Green Tree*, "[u]nlike *First Options*, the question is not about whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter. . . [r]ather the relevant question here is what kind of arbitration proceeding the parties agreed to." *Green Tree Fin. Corp.*, 539 U.S.

at 452. Thus, *Green Tree* may be helpful to Plaintiff's cause at the next stage of this dispute, in determining whether the parties agreed to arbitrate class action claims. But it is not helpful to Plaintiff at this stage, where the Court must decide who will answer that question of arbitrability.

The Court instead must look to the test outlined in *First Options* and "not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc.*, 514 U.S. at 944 (internal citations omitted). The Court finds no such evidence in the parties' Arbitration Agreement that they agreed to arbitrate arbitrability rather than allow a court to decide it. Thus, the Court must be the one to decide whether Plaintiff's class action claims may proceed to arbitration.

Now that the Court has engaged in the analysis of who will decide the question of arbitrability, the Court must turn to the other question parties raise. That is, can Plaintiff's class action FLSA claims proceed to arbitration along with his individual claims? In deciding this, the Court will need to determine whether the parties' Arbitration Agreement allows or disallows the collective claims to proceed. But this issue is necessarily tied to the question of what happens to Plaintiff's claims if they do not proceed to arbitration. The parties largely neglected to discuss this issue in their briefing. Defendant addressed it fleetingly in its Motion, but in arguing that Plaintiff "waived his class and representation actions," Defendant failed to sufficiently explain how Plaintiff did so by agreeing to the language of the Arbitration Agreement and why that alleged waiver necessitates dismissal by the Court. (Mot. at 10.) While a great deal of energy was spent trying to convince the Court that the collective claims may or may not be arbitrated and conflating that issue with the question of who must decide it, neither party provided sufficient support for an argument about the ultimate fate of the claims if they do not proceed to arbitration. Without such briefing, the Court cannot determine the arbitrability of the collective claims.

In addition to a lack of sufficient argument on the matter, binding case law relevant to this issue came down at the same time as, or immediately after, the parties submitted their briefs in 2018. Understandably, parties could not timely contemplate the implications

of the Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018). The Court believes that case bears on the ultimate fate of Plaintiff's collective claims because it discusses whether an employer's arbitration agreement may bar collective claims altogether. If Defendant wishes the Court to find that Plaintiff's collective claims may not proceed to arbitration, it must explain what happens to those claims after the Court precludes them from arbitration. And if Plaintiff wishes the Court to find that his collective claims, even if not arbitrable, must not be dismissed, he must explain why case law allows them to proceed in some fashion. The Court will not reach this decision without full briefing and knowledge of the case law. Accordingly, the parties shall each provide a supplemental brief on this issue to the Court. The parties may cite to any other pertinent case law that will assist the Court in deciding both the question of arbitrability and the question of the ultimate fate of Plaintiff's class action claims.

On the issue of sanctions, the Court finds that Plaintiff's request is unwarranted. No evidence demonstrates that Defendant refused to stipulate to arbitration in bad faith. Rather, Defendant refused a stipulation because sending all of Plaintiff's claims to arbitration is exactly the outcome Defendant hopes to avoid. Agreeing to Plaintiff's stipulation would have required Defendant to concede an important argument that it had not yet made to the Court. The Court recognizes that this additional dispute has cost (and continues to cost) both parties valuable time and resources but finds that neither party could reasonably have avoided the expense in pursuing the outcome they each seek.

**IV.  CONCLUSION**

The Court finds that it, and not an arbitrator, must determine whether Plaintiff's class action claims may proceed to arbitration under the parties' Arbitration Agreement. Additionally, the Court finds that sanctions against Defendant are inappropriate. Having decided as much, the Court now requires additional briefing on the following issues: (1) Should Plaintiff's class action claims proceed to arbitration along with his individual claims; and (2) If Plaintiff's class action claims are not arbitrable, must the Court dismiss them?

**IT IS THEREFORE ORDERED** denying in part, without prejudice, Defendant's Motion to Compel Arbitration (Doc. 22) as to Plaintiff's class action FLSA claims. The Court will maintain jurisdiction over this case in order to decide, after further briefing, whether Plaintiff's class action claims may proceed to arbitration.

**IT IS FURTHER ORDERED** granting in part Defendant's Motion to Compel Arbitration (Doc. 22). As both parties agree, and as is required by the parties' Arbitration Agreement, Plaintiff's individual state law claims shall proceed to arbitration.

**IT IS FURTHER ORDERED** that parties shall each file simultaneous briefing on the issues presented above regarding arbitration of Plaintiff's class action claims by March 4, 2019. Briefs shall not exceed five pages, and no responses are permitted.

**IT IS FURTHER ORDERED** denying with leave to refile as necessary Plaintiff's Motion for Telephonic Status Conference (Doc. 33).

Dated this 4th day of February, 2019.

Honorable John J. Tuchi
United States District Judge